UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN LAWSON,

        Petitioner,

v.                              CASE NO. 08-13758
                                HONORABLE GERALD E. ROSEN

HUGH WOLFENBARGER,

        Respondent.
_____/

**OPINION AND ORDER**
**(1) DENYING THE HABEAS CORPUS PETITION,**
**(2) DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, BUT**
**(3) GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner John Lawson has filed a *pro se* habeas corpus petition challenging his 2002 Wayne County conviction for first-degree murder. Petitioner alleged that his trial and appellate attorneys were ineffective and that he was not evaluated for competency at a facility certified by the Michigan Department of Mental Health. Having reviewed the pleadings and record, the Court concludes that Petitioner's claims lack merit and that Petitioner is not entitled to the relief he seeks. Accordingly, the petition will be denied.

**I. Background**

**A. The Trial and Sentence**

Petitioner was bound over for trial on a charge of first-degree (premeditated) murder. The charge arose from allegations that Petitioner murdered his adoptive mother by stabbing her multiple times. The state court summarized the facts as follows:

>The prosecution presented evidence of defendant's troubled relationship

> with the victim, Barbara Lawson-Singletary.  There was evidence that Singletary would not permit defendant to drive her car, would not give defendant the key to her house and defendant owed Singletary money.  There was also evidence that defendant had purchased duct tape "to wrap some things up."  Defendant told a friend that an abandoned warehouse was a place where defendant could put something and it would never be found.  Defendant also told neighbors that he did not know Singletary's whereabouts.  Moreover, defendant admitted to killing Singletary in a statement to the police immediately after his arrest.  Defendant admitted to stabbing Singletary multiple times after she had started "fussing and cussing" at him, telling him he had to leave the next morning, and swiping at him with a butcher knife.  While Singletary was still moaning, defendant admitted to leaving the house for some cigarettes.  Defendant told the police that, when he returned to the house, he did not know if Singletary was still alive.  He sat on the couch and smoked a cigarette.  Then he cleaned up the blood and wrapped the body in sheets.  Defendant admitted that a circular saw was in the house because he had contemplated cutting up the body so that it could be moved.  He also contemplated burning down the house.  Defendant fled from the police.  There was evidence of blood stains on a purple rug found on Singletary's back porch.  There was also evidence of sheets, plastic, duct tape, a circular saw, a flashlight, rubber kitchen gloves, garbage bags, and suspected blood found at Singletary's house.

*People v. Lawson*, No. 246716, 2004 WL 1801957, at *1 (Mich. Ct. App. Aug. 12, 2004).

Petitioner did not testify at trial or present any witnesses.  His defense was that he did not premeditate and deliberate the murder and that, at most, he was guilty of second-degree murder.

On October 30, 2002, a Wayne County Circuit Court jury found Petitioner guilty of first-degree (premeditated) murder, MICH. COMP. LAWS § 750.316(1)(a).  The trial court sentenced Petitioner to mandatory life imprisonment.

## B.  The Direct and Collateral Appeals

In an appeal of right, Petitioner argued that:  (1) the evidence was insufficient to convict him of first-degree murder; (2) the trial court erred in denying his motion for a directed verdict of acquittal; (3) the evidence was insufficient to bind him over for trial on first-degree murder; and (4) the trial court erred in refusing to instruct the jury on specific intent.  The Michigan

2

Court of Appeals rejected each of these claims and affirmed Petitioner's conviction. *See People v. Lawson*, 2004 WL 1801957. Petitioner raised the same claims in an application for leave to appeal in the Michigan Supreme Court, which denied leave to appeal on April 26, 2005, because it was not persuaded to review the issues. *See People v. Lawson*, 472 Mich. 895; 695 N.W.2d 74 (2005) (table).

Petitioner raised his habeas claims in a motion for relief from judgment in 2006. The trial court denied the motion in a reasoned opinion,[1] and the Michigan Court of Appeals denied leave to appeal for failure to meet the burden of establishing entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Lawson*, No. 278631 (Mich. Ct. App. Dec. 14, 2007). On June 23, 2008, the Michigan Supreme Court denied leave to appeal for the same reason. *See People v. Lawson*, 481 Mich. 913; 750 N.W.2d 193 (2008) (table).

## C. The Habeas Petition and Answer

Petitioner filed his habeas corpus petition on September 2, 2008. He alleges that: (1) trial counsel was ineffective for failing to obtain an independent psychiatric evaluation; (2) trial counsel was ineffective for failing to file a motion to suppress Petitioner's confession; (3) the state district court magistrate failed to have him examined for mental competence at a certified mental health facility; (4) pretrial counsel was ineffective at the competency hearing; (5) appellate counsel was ineffective for not raising these claims on appeal; (6) he is entitled to an evidentiary hearing on his claims of ineffective assistance of counsel; and (7) he has established

---

[1] Petitioner appears to have filed duplicate motions for relief from judgment. On June 21, 2006, the trial judge (Wayne County Circuit Judge Prentis Edwards) denied Petitioner's motion for relief from judgment, and on February 14, 2007, Wayne County Circuit Judge James A. Callahan addressed the same issues and denied Petitioner's motion for relief from judgment.

3

"good cause" for the failure to raise his claims on direct appeal and "actual prejudice" as a result of the claimed errors. Respondent argues in an answer to the habeas petition that Petitioner's claims are procedurally defaulted because he failed to raise them on direct appeal from his conviction and, when he raised the claims on state collateral review, the state courts denied leave to appeal on the basis of Michigan Court Rule 6.508(D).[2]

The Michigan Court of Appeals and the Michigan Supreme Court relied on Michigan Court Rule 6.508(D) when they denied Petitioner's applications for leave to appeal on collateral review of Petitioner's conviction. However, the United States Court of Appeals for the Sixth Circuit has held that "[b]rief orders citing Michigan Court Rule 6.508(D) are not explained orders invoking a procedural bar." *Guilmette v. Howes*, 624 F.3d 286, 289 (6th Cir. 2010). This

---

[2] This rule provides:

(D) The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion

(1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;

(2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;

(3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates

(a) good cause for failure to raise such grounds on appeal or in the prior motion, and

(b) actual prejudice from the alleged irregularities that support the claim for relief. . . .

Mich. Ct. R. 6.508(D).

4

Court therefore must look to the last reasoned state court opinion to determine the basis for the state court's rejection of Petitioner's claims. *Id*. at 291.

The last reasoned opinion was the trial court's decision on Petitioner's motion for relief from judgment. Because that court adjudicated Petitioner's federal claims on the merits, this Court finds that Petitioner's claims are not procedurally defaulted.

Even if the claims are procedurally defaulted, procedural default is not a jurisdictional limitation. *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009) (citing *Cain v. Redman*, 947 F.2d 817, 820 (6th Cir. 1991)), *cert. denied*, __ U.S. __, 130 S. Ct. 3274 (2010). The Court therefore will proceed to address the merits of Petitioner's claims, using the following standard of review.

## II. Standard of Review

Habeas petitioners are entitled to the writ of habeas corpus only if the state court's adjudication of their claims on the merits

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). "[W]here factual findings are challenged, the habeas petitioner has the burden of rebutting, by clear and convincing evidence, the presumption that the state court's factual findings are correct." *Goodwin v. Johnson*, __ F.3d __, __, Nos. 06-3571 and 06-3572, 2011 WL 181468, at *5 (6th Cir. Jan. 21, 2011) (citing 28 U.S.C. § 2254(e)(1) and *Landrum v. Mitchell*, 625 F.3d 905, 914 (6th Cir. 2010)).

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 411.

"Under § 2254(d), a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 786 (2011). Section 2254(d) "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id*.

### III. Discussion

**A. Trial Counsel**

Petitioner's first, second, and fourth claims allege ineffective assistance of pretrial and trial counsel.[3] Specifically, Petitioner contends that his pretrial attorney failed to challenge the

---

[3] Petitioner was represented by William Winter during the state district court proceedings and by David Cripps during the circuit court proceedings.

competency report and that his trial attorney failed to (1) obtain an independent psychiatric evaluation and (2) file a motion to suppress Petitioner's confession. The trial court reviewed each of these claims on the merits and rejected them.

### 1. Clearly Established Supreme Court Law

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,'" but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693). "The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Id*. at 788 (internal and end citations omitted).

### 2. Alleged Failure to Contest the Competency Reports

Petitioner alleges that the attorney who represented him during a state district court hearing on Petitioner's competence to stand trial was ineffective. Petitioner asserts that he was

7

not competent to stand trial because he had two strokes in the latter part of 1998 and the strokes rendered him unable to read, write, speak, or understand words and sentences. He also claims that he was having delusions at the time of trial. Thus, according to Petitioner, his attorney should have investigated his mental condition and objected to the admission of the competency report at the competency hearing held on November 13, 2001. Petitioner also claims that his attorney should have presented evidence at the hearing and subpoenaed the examining psychologist for questioning.

Exhibits to the habeas petition confirm that Petitioner had a stroke in October of 1998 and in November of 1998. However, the murder for which Petitioner is incarcerated occurred some time between September 5 and 7 of 2001, and Petitioner was arrested on September 7, 2001.

The record indicates that Petitioner was capable of reading and speaking on the day of his arrest. He communicated with a friend before attempting to run away from the police. Later that day, he read his constitutional rights aloud to a police officer and made a coherent, detailed statement to the police. (*Id*. at 180-82.) The following month, a psychologist interviewed Petitioner and found him competent.

Petitioner has failed to show that his strokes in 1998 rendered him incompetent to stand trial years later. Consequently, defense counsel was not ineffective for failing to investigate Petitioner's medical history or for his omissions at the competency hearing held on November 13, 2001. There was no need to present any evidence, to object to the competency report, or to produce the psychologist who authored the competency report.

### 3. Alleged Failure to Obtain an Independent Psychiatric Evaluation

Petitioner alleges that his trial attorney was ineffective for failing to have him evaluated by an independent expert for criminal responsibility and an insanity defense. Petitioner contends that, if his attorney would have investigated, he would have learned about Petitioner's strokes. Petitioner further alleges that, but for his attorney's failure to raise the insanity defense, there is a reasonable possibility that the outcome of his trial would have been different.

As noted, Petitioner was examined for competency at the district court level and found competent. Petitioner subsequently was bound over to Wayne County Circuit Court where his trial attorney asked for a psychiatric evaluation to determine whether Petitioner was competent to waive his *Miranda*[4] rights and whether he was criminally responsible for the murder.

At a hearing held on April 19, 2002, defense counsel informed the trial court that he had received two psychological reports. The first report pertained to Petitioner's competency to waive his *Miranda* rights. The report concluded that Petitioner was competent and did understand his rights. The second report concerned criminal responsibility, and the conclusion was that Petitioner was criminally responsible. Defense counsel requested appointment of an independent expert on the issue of criminal responsibility. The trial court granted the request and appointed a psychologist to render an expert opinion on Petitioner's mental state at the time of the alleged offense. (Tr. Apr. 19, 2002, at 3-4; Pet for Writ of Habeas Corpus, Ex. L.)

Petitioner maintains that he was never seen by an independent expert. However, at a pretrial conference held on June 18, 2002, defense counsel informed the trial court that Petitioner had been evaluated at the court's psychiatric clinic and by an expert of defense counsel's choosing. Defense counsel indicated that, as a result of the evaluations, he would not be raising

---

[4] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

a psychological defense at trial. (Tr. June 18, 2002, at 3-5.)

Even if, as Petitioner claims, defense counsel did not have Petitioner evaluated by an independent expert, Petitioner has failed to show that he had a viable insanity defense. He claims that his strokes rendered him insane, but his strokes occurred three years before the murder. Furthermore, a medical doctor who examined Petitioner after the first stroke stated in a report dated October 21, 1998, that Petitioner was alert and oriented. Pet. for Writ of Habeas Corpus, Ex. D, at 18A. After the second stroke, a different physician stated on November 20, 1998, that Petitioner was "fully alert and comprehends well." Pet. for Writ of Habeas Corpus, Ex. E, at 29A.

Events that occurred shortly after the crime in September of 2001 show that Petitioner's behavior was rational, oriented, and goal-directed. When the police responded to the crime scene, Petitioner acknowledged to a friend that blood on a rug at the back of his mother's house had incriminated him, and he admitted that he had done something stupid. In his subsequent statement to the police, Petitioner said that, after the stabbing, he had sat down and smoked a cigarette while thinking about what he was going to do. Then he cleaned up the blood, wrapped up his mother's body, and moved the body. He claimed that he had cleaned the house in the evenings so that nobody would see him and that he put things in black garbage bags with the intention of getting rid of the items. He also stated that he had contemplated cutting up the body and burning the house.

Petitioner subsequently was found competent to stand trial, and in 2002, a psychologist at the Third Circuit Court Psychiatric Clinic determined that Petitioner was competent to waive his *Miranda* rights and that he was criminally responsible. After trial, appellate counsel arranged for

10

a psychiatric evaluation by a different psychologist, who also determined that Petitioner was not suffering from mental illness at the time of the crime.

Petitioner has failed to demonstrate that his strokes rendered him legally insane at the time of the crime. Therefore, defense counsel was not deficient for allegedly failing to arrange for an independent psychiatric evaluation, and the allegedly deficient performance did not prejudice Petitioner or deprive him of a viable insanity defense.

### 4. Failure to File a Motion to Suppress

Petitioner asserts that his trial attorney was ineffective for failing to move to suppress his confession to the police on the ground that the police did not honor his request for an attorney.

#### a. Supreme Court Precedent

The Fifth Amendment to the United States Constitution provides that "no person shall be . . . compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. "To give force to the Constitution's protection against compelled self-incrimination, the [Supreme] Court established in *Miranda* 'certain procedural safeguards that require police to advise criminal suspects of their rights under the Fifth and Fourteenth Amendments before commencing custodial interrogation.'" *Florida v. Powell*, __ U.S. __, __, 130 S. Ct. 1195 , 1203 (2010) (quoting *Duckworth v. Eagan*, 492 U.S. 195, 201 (1989)). "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Miranda*, 384 U.S. at 444.

If at any stage of the process, the defendant indicates that he wishes to consult with an attorney or does not want to be interrogated, the police may not question him. *Id*. at 444-45.

11

And "no subsequent interrogation may take place until counsel is present," *Montejo v. Louisiana*, __ U.S. __, __, 129 S. Ct. 2079, 2090 (2009), "unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards v. Arizona*, 451 U.S. 477, 484-85 (1981). This rule "is 'designed to prevent police from badgering a defendant into waiving his previously asserted *Miranda* rights.'" *Minnick v. Mississippi*, 498 U.S. 146, 150 (1990) (quoting *Michigan v. Harvey*, 494 U.S. 344, 350 (1990)).

### b. Application

Petitioner claims that he asked Police Officer Miller for an attorney and that Officer Miller then stopped questioning him, but that Officer Thomas interrogated him shortly afterwards. There is no factual support for this allegation in the record and nothing to indicate that defense counsel knew, or should have known, that Petitioner requested an attorney when he was interrogated and that his request was not honored.

The record, moreover, contradicts Petitioner's claim. Police Officer Derryck Thomas testified at trial that Officer Miller merely acquired background information from Petitioner before Officer Thomas interrogated Petitioner. And before Officer Thomas took Petitioner's statement, he showed Petitioner a list of his constitutional rights. Petitioner read his constitutional rights aloud and then signed a written waiver of his rights, including the right to have an attorney present during questioning. By signing the form, Petitioner acknowledged that he understood his rights, that he had not been threatened or promised anything, and that he desired and agreed to answer any questions put to him. (Tr. Oct. 29, 2002, at 173-78.)

The record indicates that Petitioner's statement was voluntary and knowing. Therefore, defense counsel was not ineffective for failing to move to suppress the statement.

12

The Court concludes for the reasons given above that Petitioner's pretrial and trial attorneys were not constitutionally ineffective. Thus, the state court's adjudication of Petitioner's ineffectiveness claims was objectively reasonable.

## B. Certification of the Psychiatric Facility

The third habeas claim alleges that the state district court magistrate failed to have Petitioner examined for mental competence by a facility certified by the Michigan Department of Mental Health. The trial court declined to grant relief on this issue because Petitioner had failed to establish that the psychiatric clinic was not certified by the department of mental health.

This Court finds no merit in Petitioner's claim because, even though Petitioner has attempted to style his claim as a violation of due process, the essence of his claim is that the state district court violated state law.[5]

"A federal court may not issue the writ [of habeas corpus] on the basis of a perceived

---

[5] Petitioner asserts that the trial court violated MICH. COMP. LAWS § 330.2026(1) and Michigan Court Rule 6.125(C)(1). The statute reads in relevant part as follows:

> (1) Upon a showing that the defendant may be incompetent to stand trial, the court shall order the defendant to undergo an examination by personnel of either the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of incompetence to stand trial. . . .

MICH. COMP. LAWS § 330.2026(1). The court rule reads:

> (1) On a showing that the defendant may be incompetent to stand trial, the court must order the defendant to undergo an examination by a certified or licensed examiner of the center for forensic psychiatry or other facility officially certified by the department of mental health to perform examinations relating to the issue of competence to stand trial.

Mich. Ct. R. 6.125(C)(1).

13

error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Instead, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citing 28 U.S.C. § 2241; *Rose v. Hodges*, 423 U.S. 19, 21 (1975) (per curiam )).

Furthermore, the record indicates that Petitioner was examined for competency in 2001. One of Petitioner's own exhibits to the habeas petition indicates that the Third Circuit Court Psychiatric Clinic where Petitioner was examined was considered certified by the Michigan Department of Community Health until it was closed on July 1, 2002. *See* Pet. for Writ of Habeas Corpus, Ex. H.[6] The Court concludes that Petitioner's claim has no basis in fact and that it alleges a mere violation of state law, which is not a cognizable claim on habeas corpus review.

## C. Appellate Counsel

The fifth habeas claim alleges ineffective assistance of appellate counsel. Petitioner maintains that his appellate attorney was ineffective for not raising his substantive habeas claims on direct appeal from his conviction. The trial court stated on review of this claim that appellate counsel was not ineffective for failing to make meritless arguments. This Court agrees.

Petitioner was not entitled to compel his appointed attorney to raise all nonfrivolous claims on appeal if counsel, as a matter of professional judgment, elected not to raise the claims. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective

---

[6] The Michigan Department of Community Health was created in 1996 by consolidating the Department of Public Health, the Department of Mental Health, and the Medical Services Administration. *See* www.Michigan.gov/mdch ("About the Michigan Department of Community Health").

14

appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858 (1999) (quotation marks and end citations omitted).

Furthermore, the Court has reviewed and found no merit in the claims that Petitioner contends his appellate attorney should have raised on appeal. "[A]ppellate counsel cannot be ineffective for a failure to raise an issue that lacks merit," *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001), and there is not a reasonable probability that, but for appellate counsel's failure to raise the claims, Petitioner would have prevailed on appeal. Consequently, appellate counsel was not ineffective, and the state court's adjudication of Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland*.

**D. The Request for an Evidentiary Hearing**

The sixth habeas claim alleges that Petitioner is entitled to an evidentiary hearing on his ineffective-assistance-of-counsel claims. There is no need for a hearing to develop the facts because Petitioner's claims about trial and appellate counsel lack merit. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (stating that, "[i]n deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief"); *see also Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001) (explaining that a habeas petitioner generally is entitled to an evidentiary hearing in federal court only "if the petition 'alleges sufficient grounds for release, relevant facts are in dispute, and the state courts did not hold a full and fair evidentiary hearing'") (quoting *Wilson v. Kemna*, 12 F.3d 145, 146 (8th Cir. 1994)).

**E. Cause and Prejudice**

Petitioner alleges in his seventh and final claim that the Court should not treat his claims as procedurally defaulted because he has established "good cause" for the failure to raise his claims on direct appeal and resulting prejudice. The Court addressed each of Petitioner's claims on the merits and did not treat the claims as procedurally defaulted. Thus, there is no need to determine whether Petitioner has established "cause and prejudice" for his failure to raise his claims on direct review.

### IV.  Conclusion

The trial court's adjudication of Petitioner's claims, and the state appellate court orders affirming the trial court's ruling, did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus [Dkt. #1] is **DENIED**.

It is further **ORDERED** that a certificate of appealability is **DENIED**, because Petitioner has not made a substantial showing of the denial of a constitutional right. Nor has he shown that reasonable jurists could debate whether the petition should have been resolved differently or that the issues presented deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). Petitioner nevertheless may proceed *in forma pauperis* on appeal if he chooses to appeal this decision.

Dated: March 4, 2011                                        s/Gerald E. Rosen
                                                                            Chief Judge, United States District Court

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 4, 2011, by electronic mail and upon John Lawson, #207814, Bellamy Creek Correctional Facility, 1727 West Bluewater Highway, Ionia, MI 48846 by ordinary mail.

                              s/Ruth A. Gunther
                              Case Manager